Filed 7/21/25  In re J.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> X.O., <br><br> Defendant and Appellant. | F089579 <br><br> (Super. Ct. Nos. 23CEJ300260-1, 23CEJ300260-2) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Snauffer, J. and DeSantos, J.

Mother, X.O., appeals from the juvenile court's order terminating her parental rights as to two of her minor children, J.C. and Z.O., under Welfare and Institutions Code,[1] section 366.26. She argues the court erred by finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA)[2] did not apply to the proceedings.

Respondent Fresno County Department of Social Services (department) concedes error and that conditional reversal of the order terminating parental rights and remand to ensure compliance with ICWA is appropriate. We accept the department's concession.

**PROCEDURAL AND FACTUAL BACKGROUND**

On October 3, 2023, the department filed a juvenile dependency petition on behalf of then 13-year-old J.C., then eight-year-old Z.O. (the children), and their two younger half siblings, I.R. and J.R (the half siblings).[3] At the time the petition was filed, the children resided with mother and the half siblings' presumed father, S.R. The petition alleged the children came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) due to risk of harm resulting from mother's substance abuse. The petition listed D.C. as J.C.'s presumed father, and indicated Z.O.'s father was unknown.

During the investigation that led to the filing of the petition, mother reported she did not have any Indian ancestry. However, she later completed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form with two boxes checked: one indicating each child "is or may be a member of, or eligible for membership in, a federally recognized tribe," listing no specific tribe, and one indicating none of the factors indicating the children were Indian children applied. It appears the box indicating

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3] The children's half siblings are not subjects of this appeal. They were placed with their father, and dependency jurisdiction was dismissed. We omit facts pertaining to ICWA inquiry regarding their father, as they are not relevant to this appeal.

that the children may be Indian children is circled multiple times and the box indicating no factors apply is crossed out. D.C. declined to answer because he stated he was not J.C.'s father.

On October 4, 2023, the juvenile court ordered the children detained from mother.[4] The minute order indicated mother's ICWA-020 form stated no possible Indian ancestry.

The jurisdiction/disposition report dated October 18, 2023, included the following documentation of ICWA inquiry. Mother reported the maternal grandmother was deceased. The maternal grandfather reported he did not have Indian ancestry and declined to provide the maternal great-grandparents' contact information because they "do not care for things like this," and "he does not have a relationship with them." Mother's maternal half sister (maternal half aunt) reported she had Cherokee ancestry on the maternal grandmother's side. She provided two other maternal half aunts' names, and a phone number for one of them. The maternal half aunt whose phone number was provided reported no Indian ancestry.

D.C. reported he did not have Indian ancestry and provided his mother and father's phone numbers. The department attempted contact with J.C.'s paternal grandparents but was unable to reach them.

On October 25, 2023, at the combined jurisdiction/disposition hearing, the juvenile court found the children were described by section 300, subdivision (b) and that they did not come within the provisions of ICWA. The court adjudged the children dependents, removed them from the parents' custody, and ordered reunification services to mother and S.R. D.C. was not provided with reunification services pursuant to section 361.2, subdivision (a).

---

[4] The reporter's transcript for the detention hearing is not included in the record on appeal, so we are unaware of what, if any, ICWA inquiry was conducted on the record.

The children were subsequently placed with their maternal cousin.  The six-month status review report dated April 8, 2024, indicated ICWA "does not apply," and detailed no additional inquiry attempts.  D.C. took a DNA test and was excluded as J.C.'s biological father but was still considered his presumed father by the department.

At the six-month review hearing conducted on April 24, 2024, the juvenile court continued reunification services to mother and S.R.

The 12-month status review report dated September 30, 2024, indicated ICWA "does not apply," with no details regarding any additional inquiry efforts.

At the 12-month status review hearing on October 9, 2024, the half siblings were placed with S.R. with dependency to continue, and reunification services were terminated for both parents.  Family maintenance services were ordered for S.R., and a section 366.26 hearing was set for the children.[5]

The department's section 366.26 report dated February 3, 2025, indicated ICWA "does not apply," and that an updated inquiry was made with no new information provided.  On November 20, 2024, telephonic contact was attempted with mother, but mother did not respond, and a letter was sent to D.C., to which he did not respond.  The report detailed several attempts to reach various maternal relatives and J.C.'s paternal relatives by telephone on January 28, 2025.  Notably, these attempts did not include the maternal cousin with whom the children were placed.  Most of the family members with whom the department worker attempted contact did not answer, so the worker left a voicemail when voicemail was available.  The department did make additional contact with the maternal grandfather, who again reported no Indian ancestry.  Z.O.'s father remained unknown throughout the dependency proceedings.

---

[5]    It was later reported that at a family maintenance review hearing regarding the half siblings, the juvenile court terminated family maintenance and dependency and granted joint legal custody to both parents and sole physical custody to S.R., with mother to have supervised visits.

At the section 366.26 hearing on February 5, 2025, the juvenile court stated that ICWA remained inapplicable.  The court selected adoption as the children's permanent plan and terminated parental rights.

## DISCUSSION

Under California's statutory scheme to comply with ICWA, the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."[6]  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court,[7] rule 5.481(a).)  The department's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b)(2).)

When initial inquiry gives rise to a "reason to believe"[8] (but not sufficient evidence to determine there is "reason to know"[9]) that an Indian child is involved in a

---

[6]    An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

[7]    All further rule references are to the California Rules of Court.

[8]    "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe.  Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated" in section 224.2, subdivision (d)(1) through (6).  (§ 224.2, subd. (e)(1).)

[9]    These enumerated grounds for "reason to know" are:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family

5.

proceeding, "further inquiry regarding the possible Indian status of the child" is required, which includes gathering additional biographical information from family members and contacting relevant tribes. (§ 224.2, subd. (e)(2)(A)–(C).)

The department "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Rule 5.481(a)(5).) Before finding ICWA inapplicable, the juvenile court must make a finding that the department conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

We review the juvenile court's implied finding that there is no reason to know whether a child is an Indian child for substantial evidence, and the court's implied finding that the department has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601.)

Regarding the juvenile court's discretion in evaluating the department's inquiry efforts, this court explained in *K.H.*, "so long as the [department] conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the [department's] efforts are sufficient to satisfy the mandates of ICWA and related California law." (*K.H.*, *supra*, 84 Cal.App.5th at p. 604.)

informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village …[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] [and/or] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2025).)

"[R]easonableness, viewed through the lens of ICWA's purpose, is the touchstone. The [department's] inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Ibid*.) ICWA determinations are best left "for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding." (*Id*. at p. 621.)

Mother contends the juvenile court's finding that the department conducted an adequate inquiry was an abuse of discretion because the department failed to make contact with a number of known maternal relatives, including the maternal cousin with whom the children were placed, and failed to make contact with the Bureau of Indian Affairs or any Cherokee tribes to follow up with the claim of Cherokee ancestry.

As stated above, the department concedes error. We agree with the parties that the department's failure to contact known family members sooner resulted in a failure to obtain pertinent and available information relating to the children's potential status as Indian children and thus the department's initial inquiry was not reasonable, and, in turn, not adequate under the statute. Additionally, the maternal family's claim of Cherokee ancestry triggered the department's duty of further inquiry by giving a reason to believe the children were Indian children, and there is no evidence in the record that the department complied with that duty as set forth by section 224.2, subdivision (e)(2).[10]

---

[10] Mother's request for us to take judicial notice of the document attached to her opening brief regarding the department's duty to make "active efforts" as defined by ICWA during proceedings involving an Indian child is denied. The document is not relevant to our determination of the issue of whether inquiry was adequate. The parties appear to agree that if, upon remand, the children in the present case are determined to be Indian children, the juvenile court and department will be required to comply with the applicable provisions of ICWA and California law.

For these reasons, the juvenile court's finding that the department made an adequate inquiry was an abuse of discretion; accordingly, conditional reversal of the order terminating parental rights and remand for compliance with the statutory inquiry requirements is required.  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1151.)

## DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of rule 5.481(a)(5).  If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the order terminating parental rights.  If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.  (See 25 U.S.C. § 1912(a); §§ 224.2, subd. (i)(1), 224.3, 224.4.)